MILAN EXPRESS, INC., Plaintiff and Counterdefendant,

v.

MISSIE, INC., Defendant, Counterplaintiff and Third Party Plaintiff,

v.

LEWIS BEAR CO., Third Party Defendant,

v.

MARTHA WHITE FOODS, INC., d/b/a Model Mill Co., Third Party Defendant.

No. 83–2001–M.

United States District Court, W.D. Tennessee, W.D.

Nov. 8, 1983.

William H. Kitchens, Robert L. Rothman, Arnall, Golden & Gregory, Atlanta, Ga., William J. Landers, Martin, Tate, Morrow & Marston, P.C., Memphis, Tenn., for Lewis Bear Co.

John Paul Jones, Memphis, Tenn., for Missie, Inc.

## ORDER DENYING THIRD PARTY DEFENDANT, LEWIS BEAR COMPANY'S MOTIONS TO DISMISS

McRAE, Chief Judge.

Plaintiff, Milan Express, Inc. (Milan) filed this action against Missie, Inc. (Missie) for breach of contract based on Missie's failure to deliver 43,924 pounds of grits to Lewis Bear Co., a Florida corporation, in Pensacola, Florida. Lewis Bear Co. is engaged in the wholesale grocery distribution business and purchased these goods on consignment from Martha White Foods, Inc., d/b/a Model Mill Co., a manufacturer and seller of such products located in Jackson, Tennessee. The goods were to be delivered by Milan, an interstate motor carrier, to Lewis Bear's warehouse by 6:00 A.M. on December 22, 1982. A trip lease was executed between Milan and Missie, whereby Missie, as lessor of the transport equipment and driver for Milan, agreed to transport and deliver the cargo to Lewis Bear at the specified time.

Missie did not arrive at Lewis Bear's warehouse until 3:00 P.M. on December 22, 1982. Lewis Bear refused to accept the goods at this time. Missie alleges that Lewis Bear refused a proper tender of delivery of the cargo by Missie and that such illegal rejection by the consignee is the cause of any damage or loss the plaintiff may have suffered. Missie contends that the consignor, Martha White Foods, Inc., d/b/a Model Mill Co., improperly overloaded the goods on Missie's trailer. Such overloading caused Missie's truck to be de-

layed at the weight stations in Tennessee, Mississippi and Florida, so that it was late in arriving at Lewis Bear's warehouse. Missie asserts that the consignor's improper loading of Missie's vehicle is the cause of any damage Milan has suffered.

Lewis Bear has filed a motion to dismiss Missie's third-party complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. Lewis Bear maintains that it is not subject to the jurisdiction of this Court since it has no office, telephone, or place of business in Tennessee and because it is neither licensed to do business in Tennessee nor has an agent for service of process here. Lewis Bear does admit, however, that its trucks frequently pass through Tennessee and make deliveries to the Naval Air Station in Millington. Missie, as third party plaintiff, opposes this motion and asserts that this Court does have jurisdiction over Lewis Bear pursuant to Tenn.Code Ann. § 20–2–214(a), the long arm statute.

## IN PERSONAM JURISDICTION

█ The jurisdictional reach of federal district courts is to be determined in diversity cases by the law of the state where the court is located. *Pickens v. Hess,* 573 F.2d 380, 385 (6th Cir.1978). The Tennessee legislature has enacted a long arm statute, Tenn.Code Ann. § 20–2–214, which subjects nonresident parties to the jurisdiction of federal and state courts sitting in Tennessee on any claim arising from, *inter alia;*

1. The transaction of any business within the state;

    *    *    *    *    *    *

5. Entering into a contract for services to be rendered or for materials to be furnished in this state;

6. Any basis not inconsistent with the constitution of this state or of the United States.

The Tennessee long arm statute confers jurisdiction to the full extent allowable under the Due Process Clause. *Pickens,* 573 F.2d at 385.

In *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court set forth two necessary requirements for the valid exercise of personal jurisdiction beyond the borders of a state: there must be certain "minimum contacts" between the nonresident and the forum state and these contacts must be of such a nature to make the exercise of personal jurisdiction over the nonresident not offensive to the traditional notions of fair play and substantial justice. *Id.* at 319, 66 S.Ct. at 159. See also *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

In *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the United States Supreme Court held that since the only connection between the nonresident defendants and the forum state was the fact that an automobile sold in New York to New York residents had been involved in an accident in Oklahoma, and since the defendants had neither done business in the forum state nor availed itself of the benefits or privileges of Oklahoma law, then there was an insufficient basis from which to exert personal jurisdiction. *Id.* at 287, 100 S.Ct. at 562. The Court reaffirmed the "minimum contacts" test and held that the primary consideration is whether "defendant's conduct and connection with the forum state is such that he should reasonably anticipate being haled into court there." *Id.* at 291, 297, 100 S.Ct. at 564, 567. *See also Kulko v. California Superior Court,* 436 U.S. 84, 97–98, 98 S.Ct. 1690, 1699–1700, 56 L.Ed.2d 132 (1978); *Noel v. S.S. Kresge Co.,* 669 F.2d 1150, 1153–55 (6th Cir.1982).

█ In *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374 (1968), the Sixth Circuit Court of Appeals, construing the Tennessee long arm statute, established a three pronged test for determining the outer limits of personal jurisdiction based on a single act.

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction reasonable.

*Id.* at 381. Although the validity of this test was questioned following the addition of subsection (6) to Tenn.Code Ann. § 20–2–214(a), the *Southern Machine* standard has been reaffirmed as an appropriate gauge for measuring the constitutional limits of personal jurisdiction.[1] *Pickens v. Hess,* 573 F.2d 380, 385 (6th Cir.1978); *Capital Dredge & Dock Corp. v. Midwest Dredging Co.,* 573 F.2d 377, 379 (6th Cir. 1978); *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers,* 621 S.W.2d 560 (Tenn.1981), *cert. denied,* 455 U.S. 994, 102 S.Ct. 1623, 71 L.Ed.2d 856 (1982). However, the standard formulated in *Southern Machine* is not absolute. In determining whether the defendant has sufficient minimum contacts with the forum state to justify the exercise of personal jurisdiction, courts may also consider the quality and quantity of the defendant's contacts with the forum, the interest of the forum state, the convenience of the parties and the foreseeability that the nonresident defendant might have to defend in the forum state. *See generally, World Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564; *First National Bank of Louisville v. J.W. Brewer Tire Co.,* 680 F.2d 1123 (6th Cir.1982).

Applying these principles to the instant case, this Court finds that the exercise of personal jurisdiction over Lewis Bear is consistent with the dictates of the Due Process Clause and does not offend the traditional notions of fair play and substantial justice. *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 159. Certainly it can be said that Lewis Bear purposefully availed itself of the privilege of conducting business in this state since he entered into a contract involving a substantial order with a company having its production facilities in Tennessee. *See In Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 226–27 (6th Cir.1972). Furthermore, Lewis Bear purposefully caused economic consequences in this state by facilitating the sale of the goods in question. Certainly the business transaction Lewis Bear set in motion had reasonably foreseeable consequences on Tennessee's commerce. *See Southern Machine,* 401 F.2d at 382–83; *Nicholstone Book Bindery,* 621 S.W.2d at 563.

The Court finds that Missie's third party claim against Lewis Bear arose from its activities and business dealings in this state, namely, Lewis Bear's consignment purchase of goods from a Tennessee resident. In fact, the entire lawsuit involves various disputes which are related to Lewis Bear's contact with this state. *Southern Machine,* 401 F.2d at 384, n. 29. Additionally, Lewis Bear's "minimum contacts" with Tennessee are substantially enough connected with the forum to make the exercise of jurisdiction over it reasonable. Clearly, Tennessee has an interest in protecting its residents and resolving disputes stemming from goods produced and sold here; in fact, Tennessee has an interest in

1. Lewis Bear relies on *Gillis v. Clark Equipment Co.,* 579 S.W.2d 869 (Tenn.App.1978) in support of its motion to dismiss for lack of personal jurisdiction. In *Gillis,* the Tennessee Court of Appeals found personal jurisdiction over a foreign corporation to be lacking. The appellate court applied Tenn.Code Ann. § 20–2–201 and limited the effect of § 20–2–214(a)(6), holding that § 20–2–201 imposed a jurisdictional limit on the exercise of personal jurisdiction over a foreign corporation, that § 20–2–214(a)(6) did not implicitly repeal § 20–2–201, and apparently rejected the idea that § 20–2–214(a)(6) provided a jurisdictional alternative to § 20–2–201. This decision is wholly inconsistent with the clear intent of the legislature, as interpreted by the courts, to expand the personal jurisdiction of the Tennessee courts to the limits of the Due Process Clause. Moreover, Lewis Bear does not contend that § 20–2–201 is even applicable to the instant controversy but, instead, directs the Court's attention to § 20–2–214(a) as the applicable statute.

any cause of action "arising from any business transaction" in this state. *Southern Machine*, 401 F.2d at 384. Finally, Lewis Bear's burden of defending in this forum is minimal. Lewis Bear's assertions regarding deliveries to Millington, its general interstate involvement, and its contacts with Tennessee in this case suggest that Lewis Bear could have reasonably foreseen the probability that it would be involved in out of state litigation.

Based on the foregoing reasons, this Court concludes that Lewis Bear's motion to dismiss for lack of personal jurisdiction is denied.

### 12(b)(6) MOTION TO DISMISS

Lewis Bear also asserts that Missie has failed to state a claim upon which relief can be granted and, therefore, the third party complaint should be dismissed. It appears that Lewis Bear challenges the third party action itself.

■ Impleader, pursuant to *Fed.R.Civ.P.* 14 is designed to reduce multiplicity of litigation, promote judicial efficiency, and effectively provide a means for disposing of multiple claims arising from the same action. *See 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil* § 1442 (1971). In this regard, the Court finds that impleader of Lewis Bear by Missie was proper since the third party's liability is dependent upon the outcome of the main claim, and because Lewis Bear may be liable to Missie for all or part of Milan's original claim against Missie.[2]

■ The purpose of a motion to dismiss for failure to state a claim upon which relief can be granted is to test the sufficiency of the statement of the claim for relief.[3] In making this determination, the Court must construe the complaint in a light most favorable to the third party

plaintiff, and view its allegations as true. In order to dismiss the third party complaint for failure to state a claim, this Court must determine that Missie can prove "no set of facts in support of its claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1977). As it does not appear beyond doubt that Missie's allegations in its complaint regarding Lewis Bear's improper refusal of delivery comport with this standard, then the third party complaint should not be dismissed. Accordingly, Lewis Bear's motion to dismiss for failure to state a claim upon which relief can be granted is denied.

IT IS SO ORDERED.

---

**2.** Additionally, impleader is proper because Tennessee, the forum state, recognizes that such a right to relief exists. In *Velsicol Chem. Corp. v. Rowe*, 543 S.W.2d 337, 343 (Tenn.1976), the Tennessee Supreme Court held that a third party complaint for contribution need not show that recovery is certain, but will stand, if under some reasonable construction of the facts which

might be advanced at trial, recovery would be possible.

**3.** Since a 12(b)(6) motion to dismiss tests only the sufficiency of the complaint, the affidavits submitted by Lewis Bear in support of its motion have been excluded from this Court's consideration in resolving this motion.