**FOUR SEASONS GARDENING &
LANDSCAPING, INC.,
Plaintiff-Appellant,**

v.

**W.M. CROUCH, d/b/a Crisp Springs
Nursery, Defendant-Appellee.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 19, 1984.

Application for Permission to Appeal
Denied by Supreme Court
April 1, 1985.

Harold N. Roney, Camp & Roney, McMinnville, for plaintiff-appellant.

B. Timothy Pirtle, McMinnville, for defendant-appellee.

## OPINION

KOCH, Judge.

Four Seasons Gardening & Landscaping, Inc., a Georgia corporation, filed this action in the Circuit Court for Warren County pursuant to Tenn.Code Ann. § 26–6–101 *et seq.* to enforce a default judgment obtained in the Superior Court of Columbia County, Georgia against W.M. Crouch, a resident of Morrison, Tennessee. The trial court declined to give the Georgia judgment full faith and credit on the basis that the Georgia trial court did not acquire personal jurisdiction over Mr. Crouch. Four Seasons Gardening & Landscaping, Inc. has perfected this appeal. For the reasons stated herein, we reverse the judgment of the trial court.

W.M. Crouch owns and operates a wholesale nursery business in Morrison, Tennessee known as the Crisp Springs Nursery. He has customers in at least twelve states including Georgia.[1] Every year he mails out a wholesale price list to selected customers offering to sell his nursery stock. As part of his solicitation, Mr. Crouch also offers to deliver his nursery stock to the purchaser for an additional fee.[2]

In late 1981 or early 1982, Mr. Crouch received a telephone call from George Fuller, Jr., the president of Four Seasons Gardening & Landscaping, Inc. Mr. Fuller had done business with Mr. Crouch before and was calling to inquire whether Mr. Crouch could find him a number of bald cypress trees. Mr. Crouch found these trees at a neighboring nursery and placed a call to Mr. Fuller in Georgia to inform him that the trees had been located.

As a result of these two telephone conversations, Mr. Fuller traveled to Tennessee to select the trees he wished to purchase. Mr. Fuller and Mr. Crouch went to the nursery where the trees were growing and selected and trimmed the trees Mr. Fuller wanted to buy. Then they returned to Mr. Crouch's office where they drew up their contract.[3] After Mr. Fuller had

---

1. Mr. Crouch has served approximately twelve customers in Georgia during the past eight to ten years. This business amounts to several thousand dollars each year.

2. The solicitation used by Mr. Crouch contained the following offer: "We have access to local Trailers and trucks for delivery services. We can arrange pool shipments, and pre rate [sic]

the freight to each customers [sic]." Elsewhere, the solicitation states: "We have our own trucks. Ton truck will be .75 cents per mile. Tractor and trailer will be $1.25 a mile."

3. The record filed in this Court does not contain a copy of this contract.

agreed to purchase the cypress trees, he and Mr. Crouch agreed that they would be transported to Mr. Fuller's place of business in Georgia in Mr. Crouch's trucks.

When Mr. Fuller returned to Georgia, he began to call Mr. Crouch frequently to ask him to deliver the trees. Mr. Crouch was delayed in making the delivery because of the inclement weather. However, he finally drove his truck to Georgia himself to make the delivery. While he was in Georgia, Mr. Fuller wrote him a check to pay him in full for the trees and the delivery charges.

In September or October, 1982, Mr. Fuller called Mr. Crouch to place another order. During this telephone conversation, Mr. Fuller informed Mr. Crouch that all the nursery stock he had delivered previously had died and requested that Mr. Crouch refund his money and reimburse him for the losses. Mr. Crouch refused.

On November 15, 1982, Four Seasons Gardening & Landscaping, Inc. filed an action in the Superior Court of Columbia County, Georgia seeking damages resulting from Mr. Crouch's conduct. Mr. Crouch was personally served with process in this action on November 22, 1982. He consulted his attorney immediately. In his words, his lawyer advised him that he "was not liable in the State of Georgia" and told him that he would take care of the matter. Mr. Crouch sent all other correspondence concerning this dispute to his counsel.

No answer or other pleading was filed on Mr. Crouch's behalf in the Georgia proceeding. Thus, on February 2, 1983, the Superior Court of Columbia County, Georgia, after hearing the testimony of Mr. Fuller and making detailed findings of fact and conclusions of law, entered a default judg-ment against Mr. Crouch in the amount of $12,046.40 plus interest.[4] When Mr. Crouch received a copy of this judgment, he gave it to his attorney and told him to do what he thought was best. Counsel made no attempt to seek a reconsideration of this decision by the Georgia trial court nor was an appeal ever taken from the judgment.

Four Seasons Gardening & Landscaping, Inc. filed this action in the Circuit Court for Warren County on March 16, 1983, pursuant to Tenn.Code Ann. § 26–6–101 *et seq.*, the Uniform Enforcement of Foreign Judgments Act. The trial court heard this case on December 2, 1983, without a jury and entered a judgment on December 19, 1983, dismissing the complaint on the basis that the Georgia court did not have personal jurisdiction over Mr. Crouch.

Four Seasons Gardening & Landscaping, Inc. perfected this appeal and now raises two issues in this Court: first, whether W.M. Crouch maintained sufficient ties with the State of Georgia to subject him to the jurisdiction of the Georgia courts for causes of action arising out of the conduct of business in Georgia and second, whether the judgment of the Superior Court of Columbia County, Georgia is entitled to full faith and credit in Tennessee pursuant to Tenn.Code Ann. § 26–6–101 *et seq.* In his brief filed in this Court, Mr. Crouch also raises the issue that enforcement of this judgment would be contrary to the public policy of Tennessee.

■ Under the terms of the Uniform Enforcement of Foreign Judgments Act, the courts of this State will presume, absent proper proof to the contrary, that the decrees[5] of the courts of record of any

---

**4.** This judgment consists of $5,800 in compensatory damages [$3,520 representing the actual cost of the trees and their delivery plus $2,280 in direct incidental and consequential damages authorized by Ga.Code Ann. § 109A–2–715 (1984)] and $246.40 of interest compounded in accordance with Ga.Code Ann. § 57–110 (1984). It also includes $1,000 in attorneys fees pursuant to Ga.Code Ann. § 20–1404 (1984) and $5,000 in exemplary damages pursuant to Ga. Code Ann. § 105–2002 (1984) based upon the Superior Court's determination that Mr. Crouch had acted in bad faith and had willfully committed a wrong without any just reason.

**5.** Default judgments entered in accordance with the laws of the jurisdiction in which they are entered are entitled to full faith and credit under the Uniform Enforcement of Foreign Judgments Act. *Riehle v. Margolies,* 279 U.S. 218, 225, 49 S.Ct. 310, 313, 73 L.Ed. 669 (1929). See

sister states are valid. Thus, the burden is placed on the party seeking to attack the validity of a foreign judgment to prove that it should not be given full faith and credit in this State as required by Article 4, Section 1 of the United States Constitution. *Slidell v. Valentine,* 298 N.W.2d 599, 602 (Iowa 1980); *Riggs v. Coplon,* 636 S.W.2d 750, 755 (Tex.App.1982); and *Diners Club, Inc. v. Makoujy,* 110 Misc.2d 870, 443 N.Y.S.2d 116, 117 (1981). Although final judgments entered by courts of other states are ordinarily conclusive, Article 4, Section 1 of the United States Constitution does not compel other states to grant these judgments full faith and credit when it is shown that the court entering the judgment did not have personal jurisdiction over the party against whom the judgment is sought to be enforced. *Topham v. L.L.B. Corp.,* 493 S.W.2d 461, 462 (Tenn.1973) and *Benham v. Fisher,* 650 S.W.2d 759, 760 (Tenn.App. 1983).

Based upon our review of this record, we have determined that Mr. Crouch failed to carry his burden of proving that under the law of the State of Georgia the Superior Court of Columbia County, Georgia did not acquire personal jurisdiction over him in the action commenced by Four Seasons Gardening & Landscaping, Inc.[6]

 Both parties rely heavily upon our courts' decisions construing Tenn.Code Ann. § 20-2-214 (Tennessee's long arm statute) to support their respective positions. However, neither Tennessee's long arm statute nor our decisions construing it are apposite because it is not Tennessee law that determines whether the Georgia trial court had personal jurisdiction over Mr. Crouch. The courts of this State must look to the jurisdictional statutes[7] of the state in which the judgment sought to be enforced was entered when determining

whether that court had obtained personal jurisdiction over the non-resident defendant. *Diners Club, Inc. v. Makoujy,* 110 Misc.2d 870, 443 N.Y.S.2d 116, 118 (1981) and *McGinnis v. McGinnis,* 44 N.C.App. 381, 261 S.E.2d 491, 496 (1980). Thus, our inquiry should be limited to Georgia's long arm statute and the cases construing it to determine whether the Superior Court of Columbia County, Georgia had properly acquired personal jurisdiction over Mr. Crouch in the action filed by Four Seasons Gardening & Landscaping, Inc.

The Superior Court in Georgia acquired jurisdiction over Mr. Crouch in accordance with Georgia's long arm statute, Ga.Code Ann. § 24-113.1(1), which provides, in pertinent part:

A court of this state may exercise personal jurisdiction over any non-resident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:

(1) Transacts any business within this state;

The language of this statute is patterned after that originally enacted in Illinois. Its purpose is to extend the jurisdiction of Georgia courts to all cases in which the non-resident defendant has engaged in some purposeful activity in Georgia in connection with the matter forming the subject of the lawsuit and not just to those cases in which the contract was made in Georgia. *Coe & Payne Co. v. Wood-Mosaic Corp.,* 125 Ga.App. 845, 189 S.E.2d 459, 466-67 (1972), *rev'd on other grounds* 230 Ga. 58, 195 S.E.2d 399 (1973) and *Lurie v. Rupe,* 51 Ill.App.2d 164, 201 N.E.2d 158, 161-62

also *Riggs v. Coplon,* 636 S.W.2d 750 (Tex.App. 1982).

**6.** The trial court made no findings of fact in this case; therefore, there is nothing in this record to which the presumption of correctness pursuant to Tenn.R.App.P. 13(d) can attach.

**7.** In determining whether the Georgia court properly assumed jurisdiction over Mr. Crouch,

we are not required to consider the merits of the allegations made by Four Seasons Gardening & Landscaping, Inc. Indeed, the merit or lack of merit of this claim will not establish or defeat personal jurisdiction. *Patron Aviation, Inc. v. Teledyne Industries, Inc.,* 154 Ga.App. 13, 267 S.E.2d 274, 277 (1980).

(1964), *cert. denied* 380 U.S. 964, 85 S.Ct. 1108, 14 L.Ed.2d 154 (1965). See also *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 8, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75, *cert. denied* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).

Courts called upon to construe the scope of Ga.Code Ann. § 24–113.1 have determined that it should be applied as broadly as the Due Process Clause of the Fourteenth Amendment to the United States Constitution will permit. *Warren v. Warren,* 249 Ga. 130, 287 S.E.2d 524, 525 (1982); *Davis Metals, Inc. v. Allen,* 230 Ga. 623, 198 S.E.2d 285, 287–88 (1973); and *Brooks Shoe Manufacturing, Inc. v. Byrd,* 144 Ga.App. 431, 241 S.E.2d 299, 300 (1977). See also *Interstate Paper Corp. v. Air-O-Flex Equipment Co.,* 426 F.Supp. 1323, 1324–25 (S.D.Ga.1977). After reviewing the pertinent decisions of the United States Supreme Court,[8] the Court of Appeals of Georgia has fashioned a three-part test to determine whether it is proper to subject a non-resident defendant to the jurisdiction of Georgia's courts based upon actions that amount to transacting business in Georgia. While each case must be decided on its own particular facts,[9] a Georgia court will assume personal jurisdiction over a non-resident defendant only after it has been determined: (1) that the non-resident defendant purposely availed himself of the privilege of doing business in Georgia; (2) that the plaintiff has some cause of action against the non-resident defendant which arises out of activities within Georgia; and (3) that the non-resident defendant has sufficient, albeit minimum, contacts with Georgia to render the exercise of jurisdiction by the Georgia courts reasonable.[10] *Shellenberger v. Tanner,* 138 Ga.App. 399, 227 S.E.2d 266, 272 (1976).

Applying these Georgia precedents to the facts in this case, we think that under Georgia law there is ample basis to conclude that Mr. Crouch had sufficient contacts with the State of Georgia to be "transacting business" there and that the Georgia court's assumption of personal jurisdiction over him in this case does not offend the traditional notions of fair play and substantial justice.

The record shows, without contradiction, that Mr. Crouch has sold nursery stock to customers in Georgia for the past eight to ten years and that he had had prior dealings with Four Seasons Gardening & Landscaping, Inc. He has also routinely mailed offers to sell nursery stock to Georgia residents. In fact, Four Seasons Gardening & Landscaping, Inc. received these solocitations in Georgia. With particular reference to the transaction involved in this case, Mr. Crouch initiated at least one telephone call to his customer in Georgia and actually traveled to the customer's place of business in Georgia to deliver the nursery stock and to obtain payment. He also made certain warranties to his customer in Georgia that his nursery stock was of merchantable quality.

Under Georgia law these facts are sufficient to support a finding that Mr. Crouch had purposely taken actions to avail himself of the privilege of doing business in Georgia and that Four Seasons Gardening & Landscaping, Inc.'s causes of action against Mr. Crouch arose from his activities in Georgia.[11]

**8.** See *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**9.** See *Kulko v. Superior Court of California in and for the City and County of San Francisco,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978) and *Mergenthaler Linotype Co. v. Lenoard Storch Enterprises, Inc.,* 66 Ill.App.3d 789, 23 Ill.Dec. 352, 383 N.E.2d 1379, 1385

(1978). See also Annot., 27 A.L.R.3d 428, § 5 n. 10 (1969).

**10.** Not coincidentally, this test is substantially similar to that employed by courts construing Tennessee's long arm statute. *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968) and *Basler v. Nelson,* 633 S.W.2d 491, 493 (Tenn.App.1982).

**11.** The fact that the terms of the contract provided for delivery F.O.B. Mr. Crouch's nursery in Tennessee is not controlling. *Electro-Craft*

This decision is in accord with those of other courts construing long arm statutes similar to Georgia where goods were shipped into the forum state after solicitations and contracts had been made through the mail or by telephone. *Marshall Construction Co. v. M. Berger Co.*, 533 F.Supp. 793, 796 (W.D.Ark.1982); *Moore v. Graves*, 99 N.M. 129, 654 P.2d 582, 585 (1982); *Kiefer v. May*, 46 Mich.App. 566, 208 N.W.2d 539, 541 (1973); *State v. Colorado State Christian College of the Church of Inner Power, Inc.*, 76 Misc.2d 50, 346 N.Y.S.2d 482, 485–86 (1973); and *Willis v. West Kentucky Feeder Pig Co.*, 132 Ill.App.2d 266, 265 N.E.2d 899, 900 (1971).[12]

Based upon our determination that Mr. Crouch's activities in Georgia rendered him subject to the jurisdiction of Georgia's courts pursuant to Ga.Code Ann. § 24–113.-1, we find that the trial court erred by declining to give the judgment of the Superior Court of Columbia County, Georgia full faith and credit in this state pursuant to Tenn.Code Ann. § 26–6–101 *et seq.*

Mr. Crouch argues that even if we find that the Georgia trial court acquired personal jurisdiction over him, we should still decline to give full faith and credit to its judgment because to do so would be contrary to this State's public policy. Specifically, he asserts that this contract is governed by the law of Tennessee. Therefore, he concludes that the Georgia trial court erroneously applied remedies recognized only under Georgia law and that these remedies are "... enigma[s] to the Uniform Commercial Code which has been adopted by the State of Tennessee ..." We find this argument untenable.

■ First, we do not agree that the Georgia trial court erred by applying the law of Georgia in this case. The contract involved herein was not just a contract for the sale of goods. It was a contract for the sale and delivery of nursery stock to the purchaser at his place of business in Georgia.[13] The record is silent concerning whether the parties intended that the law of Tennessee or the law of Georgia would govern this contract. In absence of such proof, we look to the general principle of law contained in the Restatement (Second) of Conflicts of Law § 191 (1969) which provides:

> The validity of a contract for the sale of an interest in a chattel and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where under the terms of the contract the seller is to deliver the chattel unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Both Georgia's and Tennessee's version of the Uniform Commercial Code provide that Mr. Crouch's place of delivery of the nursery stock is Georgia[14] because it is at Four Seasons Gardening & Landscaping, Inc.'s place of business that he completed his performance with reference to the phys-

---

Corp. v. Maxwell Electronics Corp., 417 F.2d 365, 369 (8th Cir.1969).

**12.** This case stems from a factual situation wherein the acts giving rise to the cause of action occurred within the state where the action was brought unlike *Gillis v. Clark Equipment Co.*, 579 S.W.2d 869 (Tenn.App.1978) which dealt with an action brought in Tennessee against a non-resident defendant arising out of an injury occurring in Massachusetts. In that case, this Court held that Tenn.Code Ann. §§ 20–2–201 and 20–2–214 would not permit maintaining an action in Tennessee against a non-resident defendant for claims arising wholly outside of Tennessee and having no connec-

tion with this State. Mr. Crouch's acts forming the basis for Four Seasons Gardening & Landscaping, Inc.'s action took place in Georgia.

**13.** In light of Mr. Crouch's additional obligation to deliver the nursery stock to Four Seasons Gardening & Landscaping, Inc. in Georgia, the delivery terms providing for delivery F.O.B. at Mr. Crouch's place of business in Tennessee carry little weight. This term was meant to apply in situations where a carrier other than Mr. Crouch delivered the goods.

**14.** See Ga.Code Ann. § 109A–2–401(2)(b) and Tenn.Code Ann. § 47–2–401(2)(b).

ical delivery of the goods. Thus, based upon the Restatement's rule, the law of Georgia governed this contract.[15]

■ Second, we do not agree with Mr. Crouch that the remedies available under the Georgia law to Four Seasons Gardening & Landscaping, Inc. fatally conflict with the public policy of this State.

■ Tennessee is one of those states following the rule that Article 4, Section 1 of the United States Constitution does not require that full faith and credit be given to foreign judgments when to do so would violate the strong public policy of the state in which the judgment is sought to be enforced. See *Hyde v. Hyde*, 562 S.W.2d 194, 196 (Tenn.1978) and *In re Riggs*, 612 S.W.2d 461, 465 (Tenn.App.1980).[16] However, the judgment of the court of another state does not necessarily violate the public policy of this State merely because the law upon which it is based is different from our law. *Hunt v. BP Exploration Company (Libya) Ltd.*, 492 F.Supp. 885, 900 (N.D. Tex.1980) (allowance of prejudgment interest) and *Toronto-Dominion Bank v. Hall*, 367 F.Supp. 1009, 1016 (E.D.Ark.1973).

Under Georgia law, a successful plaintiff in an action for breach of contract who has proved that the defendant acted in bad faith is entitled to receive prejudgment interest, reasonable attorneys fees, and ex-

emplary damages. While Tennessee law does not provide identical remedies to similarly situated plaintiffs who bring their actions in Tennessee's courts, Mr. Crouch has been unable to point to any portion of Tennessee's Constitution, its laws, or the decisions of its courts that prohibit such relief or that reasonably can be construed to state that such relief would be against this State's public policy. In fact, the General Assembly has chosen to provide similar remedies in other circumstances.[17] Therefore, it would not be proper to conclude that these remedies run afoul of the public policy of this state.

■ Finally, we find that Mr. Crouch's reliance on *Mid-South Milling Co. v. Loret Farms, Inc.*, 521 S.W.2d 586 (Tenn.1975) is misplaced. This case, by its own terms, relates to the venue of a transitory cause of action brought in Tennessee. Mr. Justice Henry makes it clear in this decision that questions relating to venue bear little connection with questions relating to the application of long arm statutes. *Mid-South Milling Co. v. Loret Farms, Inc.*, 521 S.W.2d 586, 590 (Tenn.1975).

Ga.Code Ann. § 24–116 provides that actions commenced under Georgia's long arm statute should be brought where the business was transacted. There is no evidence in this record that this was not done or that

15. However, even if the Georgia trial court's judgment was in error, this is not a sufficient basis to deny giving the Georgia judgment full faith and credit in Tennessee. Restatement (Second) of Conflicts of Law § 106 (1969). See also *United States v. Stephens*, 472 F.Supp. 14, 16 (E.D.Tenn.1979), *aff'd*, 659 F.2d 1083 (6th Cir.1981); *McGinnis v. McGinnis*, 44 N.C.App. 381, 261 S.E.2d 491, 497 (1980); and *People v. Barrow*, 70 A.D.2d 916, 417 N.Y.S.2d 289, 290 (1979).

16. Our courts have followed this rule with respect to both foreign judgments [*In re Riggs*, 612 S.W.2d 461 (Tenn.App.1980) ] and rights or defenses created by foreign statutes sought to be asserted in Tennessee courts [*Paper Products Co. v. Doggrell*, 195 Tenn. 581, 586, 261 S.W.2d 127, 129 (1953) ]. The more well-reasoned rule, embodied in the Restatement (Second) of Conflicts of Law § 117 (1969), is that a valid judgment rendered in one state should be recognized and enforced in another state even though the latter

state's strong public policy would have precluded recovery if the action had been filed originally in the courts of that state. *Fauntleroy v. Lum*, 210 U.S. 230, 237, 28 S.Ct. 641, 643, 52 L.Ed. 1039 (1908); *Cannon v. Cannon*, 244 Ga. 199, 260 S.E.2d 19, 20 (1979); *Conquistador Hotel Corp. v. Fortino*, 99 Wis.2d 16, 298 N.W.2d 236, 238 (1980); and *Rich v. Con-Stan Industries*, 449 S.W.2d 323, 327 (Tex.Civ.App.1969).

17. Tenn.Code Ann. § 47–14–123 permits prejudgment interest. Tenn.Code Ann. § 47–50–109 permits exemplary damages in cases involving procurement of a breach of contract. Attorneys fees are permitted in divorce cases, and Tenn.Code Ann. § 8–30–327 permits attorneys fees in civil service appeals; Tenn.Code Ann. § 29–37–104 permits attorneys fees in cases involving erroneous governmental action; and Tenn.Code Ann. § 47–17–103 permits attorneys fees in cases involving discrimination in the extension of credit.

Mr. Crouch raised this in the Georgia proceeding. He has, therefore, waived, his opportunity to raise this issue. *Corby v. Matthews*, 541 S.W.2d 789, 791 (Tenn.1976).

For the reasons stated herein, the judgment of the trial court is reversed, and the cause is remanded for the purpose of entering an order pursuant to Tenn.Code Ann. § 26–6–101 *et seq.* giving full faith and credit to the judgment obtained by Four Seasons Gardening & Landscaping, Inc. against Mr. Crouch on February 2, 1983, in the Superior Court for Columbia County, Georgia.

The costs of this appeal are adjudged against Mr. Crouch and his surety for which execution, if necessary, may issue.

TODD, P.J. (M.S.), and CANTRELL, J., concur.